RECEIVED
DEC 2 3 2019
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

FILED
DEC 2 3 2019
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

**UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**BOARD OF TRUSTEES OF
THE SHEET METAL
WORKERS' NATIONAL
PENSION FUND
8403 ARLINGTON BLVD.,
SUITE 300
FAIRFAX, VA 22031**

        **Plaintiff,**

A19CV1253LY Case No. _____

        **v.**

**THE STATE OF TEXAS,
OFFICE OF THE COMPTROLLER OF
PUBLIC ACCOUNTS
LYNDON BAINES JOHNSON BUILDING
111 EAST 17th STREET
AUSTIN, TX 78711**

                             **COMPLAINT**

        **Defendant.**

## Introduction

1.     Plaintiff, the Board of Trustees of the Sheet Metal Workers' National Pension Fund, pursuant to 29 U.S.C. § 1132(a)(3) and Texas Property Code § 74.506, bring this action to recover funds belonging to Plaintiff that are wrongfully in the possession of Defendant and to appeal the adverse decision of Defendant, the Texas Comptroller of Public Accounts, Unclaimed Property Division ("Comptroller"), dated October 29, 2019, with regard to Claim ID No. 20054982.

## Jurisdiction and Venue

2.     The Court has jurisdiction of this action under the terms of 29 U.S.C. §

1132(a)(3), 29 U.S.C. § 1132(e)(1), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

3.    Venue in this District is appropriate pursuant to 29 U.S.C. § 1132(e)(1) and

1132(e)(2).

4.    With respect to jurisdiction and venue, Texas Property Code § 74.506(c) provides

that appeals of Comptroller decisions, with respect to unclaimed property determinations, may

only be brought in the Texas district court sitting in Travis County, Texas. However, those

requirements are pre-empted by 29 U.S.C. § 1132(e)(1).

5.    This action arose on October 29, 2019 – the date when the Comptroller issued its

adverse decision to the Plaintiff. Accordingly, this appeal of that decision is timely under

Texas Property Code § 74.506(a).

**Parties and Statutory Background**

6.    The Sheet Metal Workers' National Pension Fund ("the Pension Fund"),

is a trust fund established and maintained pursuant to Section 302(c)(5) of the

LMRA, 29 U.S.C. § 186(c)(5). The Pension Fund is an employee pension benefit

plan within the meaning of Section 3(2) of ERISA and an employee benefit plan

within the meaning of Section 3(3) of ERISA, 29 U.S.C. §§ 1002(2) and (3), and is

maintained for the purpose of providing retirement benefits to eligible participants.

The Pension Fund is also a multiemployer plan within the meaning of Section 3(37)

of ERISA, 29 U.S.C. § 1002(37).

7.    Plaintiff Board of Trustees of the Sheet Metal Workers' National Pension

Fund ("Board of Trustees") is a fiduciary within the meaning of Section 3(21)(A) of

ERISA, 29 U.S.C. § 1002(21)(A). Plaintiff Board of Trustees is the named fiduciary

for the Pension Fund under Section 402(a)(1) of ERISA, 29 U.S.C. § 1102(a)(1), and

2

as such has the authority to control and manage the operation and administration of the Pension Fund.

8.   Plaintiff's principal place of business is located at 8403 Arlington Boulevard, Suite 300, Fairfax, Virginia 22031.   The Pension Fund is administered at that location.

9.   Plaintiff brings this action on behalf of themselves and on behalf of Pension Fund participants and beneficiaries pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

10. The Comptroller collects taxes for the state of Texas and administers the Unclaimed Property Division. Its office is in Austin, Texas.

11. Section 74-601 of the Texas Property Code provides as follows:

(a)   The comptroller shall maintain a record that documents unclaimed money received under this chapter or any other statute requiring the delivery of unclaimed property to the comptroller.

(b)   The comptroller shall deposit to the credit of the general revenue fund:

(1)      all funds, including marketable securities, delivered to the comptroller under this chapter or any other statute requiring the delivery of unclaimed property to the comptroller;
*****

(4)      any income derived from investments of the unclaimed money.

Tex. Prop. Code § 74.601(a) and (b).

12. Texas law requires "Depositories," *i.e.* bank and similar institutions, to consider any accounts in its possession to be abandoned, and subject to escheatment and delivery to the Comptroller, "if for more than one year there has not been a debit or credit to the account

3

because of an act by the depositor or an agent of the depositor, other than the depository, and the depositor has not communicated with the depository." Tex. Prop. Code § 73.003(b).

13. After the escheated funds have been delivered to the Comptroller, Texas law provides for the owner to file a claim with the Comptroller which then makes a determination as to the validity of the claim based on the documents provided by the claimant. Tex. Prop. Code § 74.501.

<h3 align="center">Statement of Facts</h3>

14. The Sheet Metal Workers' National Pension Fund is a multiemployer defined benefit plan that covers employees in the unionized segment of the sheet metal industry across the United States.

15. Benny Arney was a participant in the Pension Fund. At the time of Mr. Arney's retirement, he elected an "Early Retirement Husband and Wife Pension with Level Income." A true and correct copy of that election form from the Pension Fund's records is attached as Exhibit 1. Under the terms of that election, Mr. Arney would receive a pension benefit of $1537 until age 62, at which point he would receive a benefit of $669.00 "for the rest of your life." Exhibit 1. The election terms also provided that "[i]n the event of your death, your spouse will receive, until death, monthly benefits of $451.00." Exhibit 1.

16. Mr. Arney died on January 9, 1999. Upon learning of his death, the Pension Fund notified his widow, Mrs. Betty Arney, that under the terms of Mr. Arney's pension, she was entitled to receive "$451.00 per month beginning February 1, 1999 and continuing for your lifetime." A true and correct copy of that letter, dated January 27, 1999, is attached as Exhibit 2. Mrs. Betty Arney returned the paperwork requested in that January 27, 1999 notification and began receiving a monthly benefit of $451.00. Mrs. Arney

4

received her monthly pension benefit via direct deposit to her checking account with Bank of America. These payments were made through June 2019.

17. In July of 2019, the Pension Fund received notice from Bank of American, NA that Mrs. Arney's account was being closed. A print-out of the notice the Pension Fund received is attached as Exhibit 3.

18. Upon investigation, the Pension Fund subsequently determined that Betty Arney died on November 13, 2011.

19. The Pension Plan erroneously remitted ninety-one monthly pension benefit payments, of $451.00 per month, between December 2011 and June 2019, totaling $41,041.00.

20. As each monthly payment made by the Pension Fund to the account of Betty Arney from December 2011 through June 2019 – a total of $41,041.00 – was made in error, the Pension Fund reached out to a surviving family member of Mrs. Arney in an attempt to recoup the payments and accumulated interest.

21. The Pension Fund then learned, based on information from the surviving family member and its own subsequent investigation, that the entirety of the funds at issue in this case, as well as any interest earned on those funds, were transferred by Bank of America, NA to the Defendant as unclaimed property previously belonging to Betty Arney. A copy of the notice received from Bank of America, NA, stating that the funds deposited to Mrs. Arney's account were no longer held by Bank of America, NA, is attached as Exhibit 4.

22. The Pension Fund filed a claim for recoupment of the erroneously remitted funds from the Defendant and the claim, with identification number 20054982, was denied on October 29, 2019. A true and correct copy of the claim denial issued by the Defendant is

attached as Exhibit 5.

## COUNT I
### ERISA § 502(A)(3)

23.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 22.

24.     Defendant had no right, under the terms of the Pension Fund's Plan Document or otherwise, to receive the $41,041.00, and accrued interest, and has no right to retain that money.

25.     The payment of $41,041.00 was made from the Pension Fund's assets.

26.     The $41,041.00, plus any accrued interest, rightfully belongs to the Pension Fund, which holds it in trust for the participants and beneficiaries.

27.     If the $41,041.00, plus any accrued interest, is not returned to the Pension Fund, Defendant will be unjustly enriched.

28.     To prevent the unjust enrichment of Defendant, Plaintiff is entitled to recover the $41,041.00, plus any accrued interest, that is currently held by the Defendant as unclaimed property.

## COUNT II

### PLAINTIFF IS THE OWNER IN FACT OF THE FUNDS BEING HELD BY DEFENDANT

29.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 28.

30.     The primary purpose of the Unclaimed Property laws of Texas is to reunite owners with their property. Tex. Prop. Code § 74.301.

31.     The evidence Plaintiff and the Pension Fund provided to the Defendant and with this Complaint demonstrates that the Pension Fund is the true owner of the funds

because:

    a.  The Pension Fund paid benefits to Mrs. Betty Arney in the amount of $451.00 per month and directly deposited the benefit payments into the Bank of America account.

    b.  Mrs. Arney's spouse, who preceded her in death, had elected a form of benefit which ceased upon Mrs. Arney's death.

    c.  Mrs. Arney died on November 13, 2011.

    d.  Mrs. Arney's death was not reported to the Pension Fund by friends, family, Bank of America, or any other person or institution, leaving the Pension Fund under the false assumption that she was still alive.

32.    When the Pension Fund deposited money into the account, it did so on the mistaken belief that Betty Arney was still living. Because the Pension Fund paid money into the account under a mistake of fact, it is entitled to recover its property.

33.    At all relevant times – from the date of death of Betty Arney through the date of the escheatment – the Pension Fund was the true owner of all of the erroneously deposited funds because Mrs. Arney's right to benefits under the Pension Plan ended with her death.

34.    At all relevant times following the escheatment, the Pension Fund has remained the true owner of the erroneous contributions.

## COUNT III

### COMPTROLLER ERRED IN DECIDING THAT PLAINTIFF'S CLAIM SHOULD BE DENIED AND/OR THAT IT IS PROHIBITED FROM PAYING "3rd PARTY CLAIMANTS"

35.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 34.

36.    The Defendant's determination letter (Exhibit 4) wrongly characterized

Plaintiff's claim stating: "The Texas State Comptroller's office does not pay 3rd Party Claimants."

37.     The Comptroller erred by describing the Pension Fund as a mere "3rd Party Claimant" and ignored the purpose of the statute, which is to reunite the property with its true owner.

38.     The Pension Fund ceased being indebted to Mrs. Arney upon her death and at no time has the Pension Fund been a creditor of Defendant.

39.     Because the purpose of the Unclaimed Property statute is to reunite unclaimed assets with their owners, the Defendant failed to execute that purpose by relying only on ownership labels given to it by Bank of America, NA when a true owner exists that can provide substantial evidence that it is the true owner. Here the substantial evidence points only to the Pension Fund being the true owner. Therefore, the Defendant's reliance on a strict definition of "3rd party claimant" does not serve the purpose of the underlying statutes and ignores the flexibility granted to it under Texas Property Code § 74.501(d)(8), which states that the Defendant may pay "any other person that is entitled to receive the unclaimed property under other law or comptroller policy."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands:

(1) An order reversing the determination of the Defendant, as to Claim No. 20054982, that Plaintiff is not eligible to recover the unclaimed property Defendant is holding from an account bearing the name of Mrs. Betty Arney;

(2) An order requiring Defendant to pay $41,041.00, plus any accrued interest, to

Plaintiff;

(3) Repayment of the amount by which Defendant was unjustly enriched, including any

profits, gains, or interest Defendant obtained from such funds;

(4) An award of attorneys' fees and costs; and

(5) Such other legal or equitable relief to which Plaintiff is entitled.

Respectfully submitted,

Abigail V. Carter*
BREDHOFF & KAISER, PLLC
805 15th Street, NW
Suite 1000
Washington, D.C. 20005
(202) 842-2600 (Telephone)
(202) 842-1888 (Facsimile)
acarter@bredhoff.com
*Motion for Admission Pro Hac Vice pending

Dated: December 21, 2019